RICHARD A. BILLINGSLEY, APPELLEE AND CROSS-APPELLANT, V. BFM LIQUOR MANAGEMENT, INC., DOING BUSINESS AS BRANDEIS FOOD MANAGEMENT AND BRANDEIS CATERING, INC., APPELLANTS AND CROSS-APPELLEES.

613 N.W. 2d 478

Filed July 14, 2000.    No. S-98-1013.

Jeffrey A. Silver for appellants.

Robert V. Broom, of Broom, Johnson & Clarkson, for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Gerrard, J.

Richard A. Billingsley brought an age discrimination action against BFM Liquor Management, Inc. (BFM), in the district court for Douglas County seeking damages, unpaid wages, and equitable relief in the form of front pay or reinstatement. Pursuant to a stipulation by the parties, the district court reserved ruling on the equitable issues and submitted the issues of the lawfulness of BFM's conduct and damages to the jury. The jury awarded Billingsley $59,963.93 in damages on his age discrimination claim and $4,469.88 on his unpaid wage claim. After judgment was entered on the jury verdict, Billingsley filed a motion to have the court consider his request for equitable relief and attorney fees. Before the hearing on Billingsley's motion, BFM appealed and Billingsley cross-appealed from the judgment on the jury verdict. For the following reasons, we conclude that we have no jurisdiction in this matter because the judgment entered by the trial court is not a final, appealable order. We, therefore, dismiss BFM's appeal and Billingsley's cross-appeal.

## FACTUAL BACKGROUND

Billingsley was employed by BFM Liquor Management, Inc., which also does business as Brandeis Food Management and

Brandeis Catering, Inc. (hereinafter collectively BFM), a company determined by the district court as a matter of law to be a "common enterprise" which shares employees and employs over 25 people. Billingsley was hired on August 24, 1988, to develop BFM's catering operations on the premises of the Ak-Sar-Ben coliseum in Omaha. Subsequently, an offsite catering company was separately incorporated as Brandeis Catering, Inc., and Billingsley was given additional responsibilities. Billingsley testified that during his tenure at BFM, he never received an oral or written reprimand, and that he had always performed his duties satisfactorily. As the catering operations of BFM grew, more people were hired to assist Billingsley.

BFM hired Tom Wolf in June 1993 to assist Billingsley with sales of catering engagements. Helmuth Dahlke, Billingsley's supervisor, informed Billingsley of the decision to hire Wolf. Wolf's employment arrangement was such that he was to be paid a commission on the sales of catering events he arranged. At that time, Wolf was 30 years of age.

In December 1993, Billingsley negotiated an employment agreement by which he would be paid, in addition to his salary, 3 percent of the gross monthly sales of BFM's off-premises catering and 2 percent of the gross monthly sales of BFM's on-site catering. Billingsley claims that he never received any of his commission after this agreement was finalized in January 1994. This employment agreement was in effect at the time of Billingsley's notice of termination of employment on May 23, 1994.

On May 19, 1994, Billingsley attended a management meeting called by Dahlke. At this meeting, Billingsley was given a new organizational chart for BFM's operations at Ak-Sar-Ben, pursuant to which he was informed that he would no longer report to Dahlke and that his supervisor would now be Dave Henningsen. Billingsley testified that Dahlke also informed him at this meeting that all of those people in top management, including Billingsley, would have a job with BFM until at least 1998, when BFM's contract with Ak-Sar-Ben expired. Dahlke's promise notwithstanding, Billingsley testified that Dahlke had a desire to give BFM a "younger image" and had on occasion instructed management to terminate the employment of employees because they were "old" and "useless" and hire employees

who were "younger and prettier"; other witnesses who were BFM employees at or near the same time as Billingsley testified at trial that they were aware of Dahlke's desire to give BFM a "younger image."

On Friday, May 20, 1994, a large catering event took place on the premises of Ak-Sar-Ben, after which the dishes and preparation materials were piled in a hallway at Ak-Sar-Ben and were not cleaned on the evening of that event. Dan Bice, who worked directly under Billingsley, testified that it was Bice's responsibility to make sure that the materials from the Friday catering event were cleaned in a timely fashion. Bice further testified that it was common practice to wait until the following Monday to clean materials from a large catering event held on Fridays, when that Friday event was large and there were other catering events scheduled for that same weekend. Because Billingsley was the supervisor of catering, he was contacted by Henningsen when it was discovered on May 22 that the materials from the May 20 catering event were not properly cleaned up. Billingsley was asked to drive to Ak-Sar-Ben to clean up the mess on May 22.

When Billingsley failed to appear at Ak-Sar-Ben on May 22, 1994, Sharon Smith, the chief officer for Douglas County at Ak-Sar-Ben, informed Henningsen and Dahlke that if Billingsley did not care enough to clean up the mess, he was not to be on the premises of Ak-Sar-Ben at all. Dahlke testified that this was the final incident in a process building up to his decision to terminate Billingsley's employment. Billingsley was notified by Dahlke of his termination of employment on May 23; Dahlke said Billingsley's position had been eliminated. BFM's records, however, reveal that Billingsley was replaced by Wolf.

After Billingsley learned that his employment had been terminated, he received a check from Dahlke to compensate him for wages, vacation pay, and severance. Prior to cashing this check, Billingsley contacted Larry M. Malerbi at Strategic Staff Management, the company upon whose account the check was drawn, and asked whether his cashing the check could be held against him in his legal actions against the company. Malerbi contacted the attorney for BFM in this action and received advice regarding Billingsley's cashing of the check. Based upon this advice, Malerbi advised Billingsley to cash the check and

informed him how to endorse it. Billingsley cashed the check approximately 2 years after his employment had been terminated.

On March 10, 1995, Billingsley filed a petition in the district court alleging, inter alia, wrongful discharge, breach of contract, and tortious interference with business relations; he also sought an accounting for all profits made by Brandeis Catering, Inc. After sustaining a demurrer to Billingsley's first three causes of action and twice allowing him to amend his petition, the district court sustained a demurrer to the first three causes of action on August 1. This order was noted in the trial docket, in which it was also noted that Billingsley would not be allowed to amend his pleadings any further. Other than the judge's minutes noted on the trial docket, the record before us contains no order finalizing the district court's decision on August 1.

On January 30, 1996, Billingsley filed a motion seeking leave to file a fourth amended petition, which was sustained by the district court on February 7. Billingsley amended his petition, alleging, inter alia, that BFM had discriminated against him on the basis of age in violation of Neb. Rev. Stat. §§ 48-1001 through 48-1010 (Reissue 1998), and Neb. Rev. Stat. § 20-148 (Reissue 1997). Billingsley also sought relief under Neb. Rev. Stat. §§ 48-1228 through 48-1232 (Reissue 1998) for unpaid wages. Billingsley requested backpay and other damages he had suffered due to BFM's actions; his petition also contained a prayer for reinstatement or front pay in lieu thereof and "further relief as the Court may deem just, proper, and equitable." BFM filed an answer in which it denied the allegations contained in Billingsley's petition and affirmatively alleged that Billingsley's petition was barred by collateral estoppel and res judicata pursuant to the trial docket entry on August 1, 1995.

The parties stipulated prior to trial that the district court would reserve ruling on Billingsley's request for equitable relief until after the jury determined the lawfulness of the discharge and the amount of damages, if any, Billingsley should be awarded. On August 24, 1998, the jury found that BFM had discriminated against Billingsley because of his age and awarded him damages of $59,963.93; the jury also awarded Billingsley $4,469.88 on his claim for unpaid wages, and the district court

entered judgment on the verdict that same day. On September 8, Billingsley filed a motion seeking an order regarding the equitable relief he had requested, as well as attorney fees; the motion was scheduled for hearing on September 16.

On September 15, 1998, BFM appealed the August 24 judgment. Billingsley filed a cross-appeal. We moved the appeal to our docket pursuant to our authority to regulate the caseloads of the appellate courts of this state.

## ASSIGNMENTS OF ERROR

BFM alleges, restated, that the district court erred in (1) failing to find Billingsley's claims were barred by collateral estoppel and res judicata based on the August 1, 1995, trial docket entry; (2) not finding that Billingsley failed to sustain his burden of proof on his age discrimination claim; (3) finding that Brandeis Catering, Inc., was an employer within the parameters of § 48-1002; and (4) not finding that Billingsley was estopped from claiming additional wage payments after accepting his severance package.

The sole assignment of error in Billingsley's cross-appeal is that the district court erred in entering judgment on the jury verdict prior to its consideration of his prayer for equitable relief and attorney fees.

## STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *State v. Johnson, ante* p. 942, 613 N.W.2d 459 (2000).

## ANALYSIS

### APPELLATE JURISDICTION

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Id.* Notwithstanding whether the parties raise the issue of jurisdiction, an appellate court has a duty to raise and determine the issue of jurisdiction sua sponte. See *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597

N.W.2d 394 (1999). The jurisdictional issue posed in this case is whether the judgment entered on the jury verdict but prior to the court's consideration of Billingsley's request for equitable relief is a final, appealable order.

■ The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *In re Estate of Peters, ante* p. 154, 609 N.W.2d 23 (2000); *Raney v. Blecha*, 258 Neb. 731, 605 N.W.2d 449 (2000). For the reasons stated herein, we determine that the judgment entered on the jury verdict in the instant case is not a final, appealable order and that we lack jurisdiction over BFM's appeal and Billingsley's cross-appeal.

■ To constitute a reviewable final order, the August 24, 1998, judgment must be in conformity with one of the afore-mentioned categories of final orders. There is no question that the jury verdict and judgment entered thereon affect a substantial right. The judgment, however, was not entered during a special proceeding, as defined in *O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998), nor was it entered pursuant to a summary application after judgment. We must therefore decide whether the August 24 order entered by the district court determines the action and prevents a subsequent judgment. To determine an action and prevent a subsequent judgment, an order must dispose of the whole merits of the case and must leave nothing for further consideration of the court; however, if the cause is retained for further action, the order is interlocutory. See *Slaymaker v. Breyer*, 258 Neb. 942, 607 N.W.2d 506 (2000). We have consistently stated that when a substantial right is undetermined and the cause is retained for further action, the order is not final. *Lake v. Piper, Jaffray & Hopwood Inc.*, 212 Neb. 570, 324 N.W.2d 660 (1982).

The parties stipulated on the first day of trial that the district court would try only the damages issue to the jury and reserve ruling on Billingsley's request for equitable relief until after the jury had rendered its verdict. The parties' agreement notwith-

standing, BFM filed the instant appeal after Billingsley filed a motion asking the court to consider his request for equitable relief and attorney fees, but before the district court could hear arguments thereon. A determination whether Billingsley is entitled to equitable relief or attorney fees is necessary to completely dispose of the cause pending in the district court. Therefore, the judgment entered on the jury verdict, the judgment from which BFM has taken this appeal, is interlocutory and does not constitute a final, appealable order within the first category of final orders mentioned above.

### AGE DISCRIMINATION CLAIM—TRIAL PROCEDURE

Because the instant case demonstrates how cases brought pursuant to § 48-1009 can cause confusion and result in premature interlocutory appeals, we take this opportunity to clarify our interpretation of § 48-1009 and the procedure by which a case thereunder should proceed at trial. At the time Billingsley filed the instant lawsuit, § 48-1009 provided:

> In any action brought to enforce the provisions of sections 48-1001 to 48-1009, the court shall have jurisdiction to grant such *legal or equitable relief as the court may deem appropriate* to effectuate the purposes of sections 48-1001 to 48-1009, including judgments compelling employment, reinstatement, or promotion, or enforcing liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation.

(Emphasis supplied.)

This court has previously stated that § 48-1009 allows a plaintiff to invoke either the legal or equitable powers of the court and that when confronted with an appeal involving Nebraska's Act Prohibiting Unjust Discrimination in Employment Because of Age (the act), we would look to the plaintiff's petition to determine whether an action is legal or equitable. See *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995). Further, we have consistently conformed our reading of the act to the federal courts' reading of the federal Age Discrimination in Employment Act of 1967 (ADEA), which the act closely parallels. See, e.g., *Humphrey v. Nebraska Pubic Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993); *Allen*

*v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988). Our interpretation of the act in *Synacek v. Omaha Cold Storage, supra*, however, does not conform to the interpretation given portions of the ADEA similar to § 48-1009, thereby causing some confusion when age discrimination cases are brought to trial in state court.

The parties' confusion in the instant case may have originated from language in *Synacek v. Omaha Cold Storage, supra*, wherein we stated that when a plaintiff seeking relief under the act includes a prayer for equitable relief in his or her petition, the action is "pled in equity" and that "the jury empaneled to consider some of the issues in [the] case serve[s] only an advisory role, and its findings [are] not binding on the trial court." 247 Neb. at 247, 526 N.W.2d at 94. This interpretation of the act, however, is inconsistent with our prior statements that we will conform our reading of the act to the federal reading of the ADEA and is also contrary to the plain language of the statute. Thus, we deem it appropriate to reconsider a portion of the rationale in *Synacek v. Omaha Cold Storage* at this time.

The language of § 48-1009 does not suggest that a litigant who includes a prayer for equitable relief forgoes the opportunity to have a jury decide factual issues relating to the lawfulness of the employer's conduct and the damages related thereto. To the contrary, a litigant is entitled to have a jury determine the lawfulness of the employer's conduct and the amount of claimed past damages, *in addition to* having the court consider any request for equitable relief. The "either or" approach in *Synacek v. Omaha Cold Storage, supra*, whereby the lawsuit is classified as either a case at law or a case in equity, is inconsistent with both the language of the act and the way the federal courts have interpreted the ADEA. Compare *Humphrey v. Nebraska Public Power Dist., supra* (treating action under act as one at law when petition did not seek equitable relief), with *Allen v. AT&T Technologies, supra* (differentiating petitions of several plaintiffs and noting that those including prayers for equitable relief were to be tried in equity, while those with only monetary damages were to be tried at law).

We, therefore, examine the federal approach and find the case of *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093 (8th Cir.

1982), to be instructive and typical of the well-established procedure utilized in the federal system. *Gibson v. Mohawk Rubber Co.* involved an age discrimination claim filed by a supervisor at a rubber plant. The primary issue therein was whether the jury was properly instructed on how to consider damages, but crucial to the instant appeal was the Eighth Circuit's explanation of the proper procedure for trial in age discrimination cases:

> After the jury trial on the foregoing damages issues, the district court should reconsider [the plaintiff's] request for equitable relief. The equitable relief that the district court may grant includes, *inter alia,* additional pension benefits, reinstatement, and monetary damages in lieu of reinstatement. . . .
>
> In fashioning its equitable remedy, the district court is not free to reject the jury's findings on whether [the defendant company] would have retained [the plaintiff] when the . . . plant closed, or on any other issues in this case. . . . Although the court below retains its discretion to consider all the circumstances in this case when it determines what equitable relief may be appropriate, it cannot base its decision on its own factual findings that conflict with those expressly made by the jury.

*Gibson v. Mohawk Rubber Co.*, 695 F.2d at 1100-01. See, also, *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635 (8th Cir. 1997); *Duke v. Uniroyal Inc.*, 928 F.2d 1413 (4th Cir. 1991) (stating that where both legal and equitable remedies are demanded, appropriate method of proceeding requires submission of case first to jury to resolve liability and all legal damages, after which district court conducts trial in equity to resolve all issues of equitable relief); *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391 (6th Cir. 1990); *Spulak v. K Mart Corp.*, 894 F.2d 1150 (10th Cir. 1990); *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461 (5th Cir. 1989); *Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541 (11th Cir. 1988); *Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F.2d 1249 (2d Cir. 1987); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir. 1987); *Maxfield v. Sinclair Intern.*, 766 F.2d 788 (3d Cir. 1985). Such a procedure is logical and has proved to be workable in the federal courts. We conclude that state court tri-

als brought under the Nebraska act should be conducted in the same manner.

Thus, we determine that *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995), was correct insofar as it noted the propriety of a trial court's submission of the damages issues involved in an age discrimination case to the jury; however, to the extent that *Synacek v. Omaha Cold Storage* holds that such a jury serves in only an advisory capacity when a plaintiff seeks both legal and equitable relief, it is overruled. The proper procedure, as noted in *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093 (8th Cir. 1982), is for the trial court to submit the damages issue in an age discrimination case to the jury, if one is empaneled, and reserve ruling on a plaintiff's requested equitable relief until after the jury renders a verdict. A trial court should then enter an order on the jury verdict and reserve entering judgment until after the court has considered any requests for equitable relief. See *id.* In other words, the trial court should limit itself to entering but one final judgment based on all of the rights and remedies of the parties before it. In the instant case, the district court has not ruled upon Billingsley's motion for equitable relief and attorney fees. In the absence of a judgment or order finally disposing of a case, an appellate court is without jurisdiction to act and must dismiss the purported appeal. *In re Interest of Dustin H. et al., ante* p. 166, 608 N.W.2d 580 (2000).

## CONCLUSION

Because neither the equitable relief sought by Billingsley nor the attorney fees issue has been determined by the district court, we lack jurisdiction to decide the merits of these matters, as the judgment entered pursuant to the jury verdict on August 24, 1998, is not a final, appealable order. Accordingly, we dismiss BFM's appeal and Billingsley's cross-appeal.

APPEAL DISMISSED.