RICHARD A. BILLINGSLEY, APPELLEE AND CROSS-APPELLANT, V.
BFM LIQUOR MANAGEMENT, INC., DOING BUSINESS AS
BRANDEIS FOOD MANAGEMENT AND BRANDEIS CATERING, INC.,
APPELLANTS AND CROSS-APPELLEES.

645 N.W.2d 791

Filed June 14, 2002.   No. S-01-171.

Jeffrey A. Silver for appellants.

Robert V. Broom, of Broom, Johnson & Clarkson, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

In his fifth amended petition filed in the district court for Douglas County, Richard A. Billingsley alleged he had been discriminated against in the workplace on the basis of age. Billingsley sought damages, unpaid wages, equitable relief, and attorney fees pursuant to Nebraska's Act Prohibiting Unjust Discrimination in Employment Because of Age (age discrimination act), Neb. Rev. Stat. §§ 48-1001 to 48-1010 (Reissue 1998), and the Nebraska Wage Payment and Collection Act (wage payment act), Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 1998). The named defendants were BFM Liquor Management, Inc.,

doing business as Brandeis Food Management, and Brandeis Catering, Inc.

Following trial, the jury awarded Billingsley $59,963.93 in damages on his age discrimination claim and $4,469.88 on his unpaid wage claim. An appeal was taken. Because the district court had not ruled on Billingsley's request for equitable relief, the purported appeal was dismissed for lack of a final, appealable order. *Billingsley v. BFM Liquor Mgmt.*, 259 Neb. 992, 613 N.W.2d 478 (2000). Thereafter, the district court considered Billingsley's requested equitable relief. The district court denied Billingsley's request for front pay or reinstatement. The district court awarded Billingsley attorney fees and postjudgment interest. BFM Liquor Management, Inc., and Brandeis Catering, Inc., appeal, and Billingsley cross-appeals. We affirm.

## II. STATEMENT OF FACTS

This is the second appearance of this case in this court. See *Billingsley, supra.* We repeat the facts recited in *Billingsley* which are necessary to this opinion.

Billingsley was employed by BFM Liquor Management, Inc., which also does business as Brandeis Food Management (BFM), and Brandeis Catering, Inc. (BCI), businesses determined by the district court as a matter of law to be a "common enterprise" under § 48-1002 of the age discrimination act. The record reflects that in 1993 and 1994, BFM employed over 25 people. In those same years, defendants claim BCI employed fewer than 25 people. Billingsley was hired on August 24, 1988, to develop BFM's catering operations on the premises of the Ak-Sar-Ben coliseum in Omaha. Subsequently, an offsite catering company was separately incorporated as BCI, and Billingsley was given additional responsibilities. Billingsley testified that during his tenure with defendants, he never received an oral or written reprimand, and that he had always performed his duties satisfactorily. As defendants' catering operations grew, more people were hired to assist Billingsley.

Tom Wolf was hired in June 1993 to assist Billingsley with the sales of catering engagements. Helmuth Dahlke, Billingsley's supervisor, informed Billingsley of the decision to hire Wolf. Wolf's employment arrangement was such that he was to be paid

a commission on the sales of catering events he arranged. At that time, Wolf was 30 years of age.

In December 1993, Billingsley negotiated an employment agreement by which he would be paid, in addition to his salary, 3 percent of the gross monthly sales of BFM's off-premises catering and 2 percent of the gross monthly sales of BFM's onsite catering. Billingsley claims that he never received any of his commission after this agreement was finalized in January 1994. This employment agreement was in effect at the time of Billingsley's notice of termination of employment on May 23, 1994.

On May 19, 1994, Billingsley attended a management meeting called by Dahlke. At this meeting, Billingsley was given a new organizational chart for BFM's operations at Ak-Sar-Ben, pursuant to which he was informed that he would no longer report to Dahlke and that his supervisor would now be Dave Henningsen. Billingsley testified that Dahlke had a desire to give defendants a "younger image" and had on occasion instructed management to terminate the employment of employees because they were "old" and "useless" and hire employees who were "younger and prettier." Other witnesses who were BFM employees during the same timeframe as Billingsley testified at trial that they were aware of Dahlke's desire to give defendants a "younger image."

On Friday, May 20, 1994, a large catering event took place on the premises of Ak-Sar-Ben, after which the dishes and preparation materials were piled in a hallway at Ak-Sar-Ben and were not cleaned on the evening of that event. Because Billingsley was the supervisor of catering, he was contacted by Henningsen when it was discovered on May 22 that the materials from the May 20 catering event were not properly cleaned up. Billingsley was asked to drive to Ak-Sar-Ben to clean up the mess on May 22. Dan Bice, who worked directly under Billingsley, testified that it was Bice's responsibility to make sure that the materials from the Friday catering event were cleaned in a timely fashion. Bice further testified that it was common practice to wait until the following Monday to clean materials from a large catering event held on Fridays when that Friday event was large and there were other catering events scheduled for that same weekend.

When Billingsley failed to appear at Ak-Sar-Ben on May 22, 1994, Sharon Smith, the then chief executive officer for Douglas County Racing and Douglas Recreation Corporation, which ran the Ak-Sar-Ben property, informed Henningsen and Dahlke that if Billingsley did not care enough to clean up the mess, he was not to be on the premises of Ak-Sar-Ben at all. Dahlke testified that this was the final incident in a process building up to his decision to terminate Billingsley's employment. Billingsley was notified by Dahlke of his termination of employment on May 23; Dahlke said Billingsley's position had been eliminated. Defendants' records, however, reveal that Billingsley was replaced by Wolf, who was younger than 40 years of age.

On March 10, 1995, Billingsley filed a petition in the district court. For his first three causes of action, Billingsley alleged wrongful discharge, breach of contract, and tortious interference with business relations, respectively. For his fourth cause of action, Billingsley sought an accounting for all profits made by BCI. After twice sustaining defendants' demurrer to Billingsley's first three causes of action and twice allowing him to amend his petition, on August 1, the district court sustained defendants' third demurrer to the first three causes of action alleged in Billingsley's third amended petition. Although not evident in the record in *Billingsley v. BFM Liquor Mgmt.*, 259 Neb. 992, 613 N.W.2d 478 (2000), the transcript in the instant appeal shows that the district court dismissed Billingsley's wrongful discharge, breach of contract, and tortious interference claims, each without leave to amend. As of August 1, the only claim remaining in Billingsley's third amended petition was his accounting cause of action.

After hiring new counsel, Billingsley filed a motion seeking leave to file a fourth amended petition on January 30, 1996. The motion was sustained on February 7. In his fourth amended petition, Billingsley added three new causes of action. For his first cause of action, Billingsley alleged, inter alia, that defendants had discriminated against him in employment on the basis of age in violation of the age discrimination act. In his second and third causes of action, Billingsley sought unpaid wages under the wage payment act. Billingsley requested backpay and other damages he had suffered due to defendants' actions. His

petition also contained a prayer for reinstatement or front pay in lieu thereof, attorney fees, and "further relief as the Court may deem just, proper, and equitable." In his fourth amended petition, Billingsley abandoned his separate cause of action for an accounting.

On March 28, 1997, Billingsley moved to file a fifth amended petition. On April 8, the district court sustained Billingsley's motion to amend. The fifth amended petition amended the fourth amended petition by correcting the name of one of the corporate defendants and by correcting allegations relating to Billingsley's bonus agreement with BFM. Otherwise, Billingsley's fourth amended petition remained unchanged.

The fifth amended petition (petition) is the operative petition for purposes of trial and of this appeal. On May 28, 1997, defendants filed an answer in which they denied the allegations contained in Billingsley's petition and affirmatively alleged, inter alia, that due to the district court's order of August 1, 1995, dismissing three causes of action as they had been pled, Billingsley's petition was barred by res judicata and collateral estoppel.

The 4-day jury trial began on August 17, 1998. The record contains approximately 800 pages of testimony from 17 witnesses and approximately 76 exhibits. To the extent they are necessary, further facts and rulings from the trial are incorporated in our analysis below. The parties stipulated prior to trial that the district court would reserve ruling on Billingsley's request for equitable relief until after the jury determined the lawfulness of the discharge and the amount of damages, if any, Billingsley should be awarded with respect to these legal issues.

During the jury instruction conference held near the conclusion of the trial, the district court determined as a matter of law that pursuant to § 48-1002, BFM and BCI were a "common enterprise," sharing employees and employing over 25 people, and that both entities met the statutory definition of an "employer" under the age discrimination act which defines an employer as "any person having in his or her employ twenty-five or more individuals." See § 48-1002(2).

Defendants moved for a directed verdict, claiming, inter alia, that Billingsley had failed to demonstrate that his termination

from employment was based on age discrimination and not some other legitimate reason. The district court denied defendants' motion for directed verdict, and the case was submitted to the jury.

On August 24, 1998, the jury found that defendants had discriminated against Billingsley because of his age and awarded him damages of $59,963.93. The jury also awarded Billingsley $4,469.88 on his claim for unpaid wages. Billingsley filed a motion seeking an order regarding equitable relief and attorney fees. The motion was scheduled for hearing on September 16.

On September 15, 1998, defendants appealed the jury award prior to the district court's having ruled on Billingsley's claims for equitable relief and attorney fees. Billingsley filed a cross-appeal. We dismissed the appeal for lack of jurisdiction. *Billingsley v. BFM Liquor Mgmt.*, 259 Neb. 992, 613 N.W.2d 478 (2000). In *Billingsley*, we concluded that the jury verdict was not a final, appealable order because neither the equitable relief sought by Billingsley nor the attorney fees issue had been determined by the district court.

Following our dismissal of the purported appeal, the district court held a hearing on August 24, 2000, on Billingsley's claims for equitable relief and attorney fees, as well as his request for postjudgment interest. In an order filed December 14, the district court ruled on these claims as follows:

> Based upon the over 4-year gap between Richard Billingsley's termination of employment, and his trial, and based upon the jury's computation of his wage claim and his age claim . . . the Court is persuaded that the verdicts which the jury reached were inclusive not only of Richard Billingsley's legal claims, but those matters which are included within Billingsley's pending request for equitable relief, save the claim for an attorney's fee and post-judgment interest running from the date of the jury's award.

The district court thus denied Billingsley equitable relief of either front pay or reinstatement and set a hearing date on Billingsley's request for attorney fees and postjudgment interest.

On January 5, 2001, the district court held a separate hearing on Billingsley's request for attorney fees and postjudgment interest. In an order filed January 10, the district court awarded

Billingsley attorney fees and postjudgment interest. Judgment was entered.

Defendants appealed the district court's judgment. Billingsley filed a cross-appeal.

## III. ASSIGNMENTS OF ERROR

Defendants assign several errors, three of which we discuss. Defendants claim that the district court erred in (1) not finding that Billingsley's claims as set forth in the petition were barred by res judicata and collateral estoppel due to the dismissal of the first three causes of action in Billingsley's third amended petition, (2) concluding that although BCI had fewer than 25 employees, BFM and BCI were to be treated as a common enterprise and thus employers within § 48-1002, and (3) failing to find that Billingsley "failed to sustain his burden of proof because of Defendants' articulation of legitimate nondiscriminatory reasons for [Billingsley's] termination from employment so that no reasonable jury could have returned a verdict for [Billingsley]."

Billingsley assigns two errors on cross-appeal, one of which we discuss. Billingsley claims, restated, that the district court erred in failing to award equitable relief.

## IV. STANDARDS OF REVIEW

The applicability of the doctrines of res judicata and collateral estoppel is a question of law. *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002); *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002). Similarly, statutory interpretation presents a question of law. *Douglas Cty. Bd. of Comrs. v. Civil Serv. Comm.*, 263 Neb. 544, 641 N.W.2d 55 (2002). On questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001).

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). An appellate court's review of the trial court's exercise of equity jurisdiction is de novo on the record, with independent

conclusions of fact and law. *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000).

## V. ANALYSIS

### 1. APPEAL

#### (a) Claims Not Barred by Doctrines of Res Judicata and Collateral Estoppel

Defendants argue that the district court erred in not determining that Billingsley's claims under the age discrimination act and under the wage payment act were barred by the doctrines of res judicata and collateral estoppel. There is no merit to this assignment of error.

Defendants specifically assert that on August 1, 1995, when the district court dismissed Billingsley's common-law causes of action for wrongful termination, breach of contract, and tortious interference from his third amended petition without leave to amend such claims, Billingsley's statutory claims for age discrimination and unpaid wages subsequently pled in his fifth amended petition were subsumed within that dismissal and that their assertion was barred by res judicata and collateral estoppel. Because, as detailed below, res judicata and collateral estoppel are limited in their application to subsequent actions, defendants' reliance on these doctrines within the course of the same action is misplaced.

In connection with this assignment of error, defendants contend that when the dismissal order was not vacated by the district court, Billingsley was precluded from subsequently amending his petition to add his statutory claims. In this regard, defendants note that before a district court can enter orders directing the course of a previously dismissed case, it must vacate the dismissal and reinstate the case. See *Murray Constr. Servs. v. Meco-Henne Contracting*, 10 Neb. App. 316, 633 N.W.2d 915 (2001). Defendants' reliance on *Murray Constr. Servs.* is misplaced. The instant appeal involves but one case which was not previously dismissed. Furthermore, the August 1, 1995, dismissal order was limited to three common-law causes of action pled in the third amended petition, which causes of action were not amended by either the fourth or fifth amended

petitions. The fourth amended petition raised statutory causes of action in the pending action for the first time.

In connection with defendants' argument based on res judicata and collateral estoppel, we note that in its August 1, 1995, order, the district court dismissed from Billingsley's third amended petition the three common-law causes of action of wrongful termination, breach of contract, and tortious interference, without leave to amend. The parties agree that the order of August 1 was not vacated. When Billingsley sought and was granted leave to file his fourth amended petition, the petition did not replead the dismissed common-law causes of action, but, rather, added three completely new statutory causes of action: one for age discrimination under §§ 48-1001 to 48-1010 and two for wage payment under §§ 48-1228 to 48-1232. The fifth amended petition repeated the causes of action alleged in the fourth amended petition. Thus, although the common-law wrongful termination, breach of contract, and tortious interference causes of action were dismissed without leave to replead, the district court's order of dismissal did not encompass causes of action subsequently asserted in the same case under statutory provisions involving age discrimination and unpaid wages.

Res judicata refers to claim preclusion, while collateral estoppel refers to issue preclusion, two different concepts, although the two terms are often used together. *Hickman v. Southwest Dairy Suppliers, Inc.*, 194 Neb. 17, 230 N.W.2d 99 (1975). We have stated that under res judicata, "a final judgment on the merits is conclusive upon the parties in any later litigation involving the same cause of action." *Woodward v. Andersen*, 261 Neb. 980, 987, 627 N.W.2d 742, 749 (2001). Under collateral estoppel, when an issue has been determined by a final judgment, that issue cannot again be litigated between the same parties in a "future lawsuit." *Id.* at 987-88, 627 N.W.2d at 749.

We take this opportunity to state that although it was apparent from the discussion of the facts of our previous opinions, we have not always explicitly referred to the requirement that for res judicata and collateral estoppel to apply, the potential application is restricted to subsequent lawsuits. See, e.g., *City of Kearney v. Johnson*, 222 Neb. 541, 385 N.W.2d 427 (1986); *Hickman, supra*. However, it is essential that there be a

prior action to invoke application of these doctrines in the subsequent case. See *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993) (stating that for application of res judicata and collateral estoppel, successive lawsuits are required). See, also, *Wicker v. Vogel*, 246 Neb. 601, 603, 521 N.W.2d 907, 909 (1994) (stating that res judicata is inapplicable when parties are "involved in but one action"); *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 320, 343 N.W.2d 903, 905 (1984) (collateral estoppel may apply to pending action so long as identical issue was decided in "prior action"). As to res judicata, it is required that there must have been a decision on the merits in the prior action. See *Gruber v. Gruber*, 261 Neb. 914, 626 N.W.2d 582 (2001) (stating that because court's decision that it lacked jurisdiction to enter order was not resolution on merits of claim, res judicata did not apply).

The doctrines of res judicata and collateral estoppel bar the relitigation of certain issues in a subsequent lawsuit. In the instant case, there has been no former lawsuit reaching final judgment as to the statutory age discrimination and wage payment issues tried pursuant to the fifth amended petition. Because there is no prior action, neither res judicata nor collateral estoppel is applicable to this case in the manner proposed by defendants. See, *Wicker v. Vogel, supra*; *In re Application of City of Lincoln, supra*.

We conclude that Billingsley was not precluded by the doctrines of res judicata and collateral estoppel from amending his petition to add his statutory causes of action. Accordingly, there is no merit to this assignment of error.

### (b) Defendants Are Common Enterprise for Purposes of "Employer" Under § 48-1002

For their next assignment of error, defendants assert that the district court erred when it determined, as a matter of law, that BFM and BCI were a "common enterprise" which shared employees and employed over 25 people, thus subjecting both BFM and BCI to the age discrimination act. Defendants focus on the fact that in 1993 and 1994, BCI had fewer than 25 employees on its payroll and, standing alone, was not an "employer" within the meaning of § 48-1002. Billingsley worked for BFM and BCI,

and the record shows that, as a matter of law, BFM and BCI were a "common enterprise." Therefore, both defendants were subject to the age discrimination act and there is no merit to this assignment of error.

The issue raised in this assignment of error presents the question of statutory interpretation of whether the employees of technically separate entities may be combined for the purpose of meeting the statutory definition of an "employer" under § 48-1002. Statutory interpretation presents a question of law. *Douglas Cty. Bd. of Comrs. v. Civil Serv. Comm.*, 263 Neb. 544, 641 N.W.2d 55 (2002). On questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001).

Under the age discrimination act, it is an unlawful employment practice for an employer "[t]o refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to his terms, conditions, or privileges of employment, otherwise lawful, because of such individual's age, when the reasonable demands of the position do not require such an age distinction." § 48-1004(1)(a). The prohibitions under the age discrimination act are "limited to the employment of individuals who are at least forty years of age but less than seventy years of age." § 48-1003. The age discrimination act defines an "employer" governed by the act as "any person having in his or her employ twenty-five or more individuals." § 48-1002(2).

This court has previously stated that when applying the provisions of the Nebraska age discrimination act, it will look to federal decisions interpreting the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 to 634 (1994), for guidance in construing the Nebraska age discrimination act. See *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993) (stating that while federal protection is provided to all individuals who are at least 40 years of age, this court, as general rule, in other respects conforms its reading of Nebraska's age discrimination act to reading of ADEA). An employer is defined under the ADEA as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or

more calendar weeks in the current or preceding year." 29 U.S.C. § 630(b).

Under the ADEA, the federal courts have recognized that "in the context of separate corporate entities, a court may calculate the number of employees by reference to the parent's employment rolls if the two distinct entities 'collapse' into a single employer." *Darden v. DaimlerChrysler North American Holding*, 191 F. Supp. 2d 382 (S.D.N.Y. 2002). See, also, Annot., 137 A.L.R. Fed. 551, 567 (1997) ("[c]ourts may consider two ostensibly separate business entities to be a single 'employer' for ADEA purposes if the facts indicate that the two are an 'integrated enterprise' ").

■■■ According to the *Darden* opinion, two distinct entities " 'collapse' " into a single employer if the two businesses have "(1) interrelated operations, (2) centralized control of labor relations, (3) common management and (4) common ownership or financial control." 191 F. Supp. 2d at 395. We believe the approach recited in *Darden* is sensible under the Nebraska age discrimination act and adopt the four-part test outlined therein.

In the instant case, the record reflects that both BFM and BCI operated under the control of Alan Baer & Associates. The record further reflects that BFM and BCI shared employees and that they had an economic relationship with respect to these shared employees. Another Alan Baer & Associates business, Strategic Staff Management, would oversee various human resource issues for both businesses. BFM and BCI shared similar management personnel, including Dahlke. Indeed, during the trial, Dahlke testified that he was employed by Alan Baer & Associates and that during the course of his employment, the positions he held with BFM and BCI had "been the same, basically . . . I'm on the board of directors, and I'm probably a vice president or a treasurer or a secretary."

Based upon our review of the record in this case, we conclude that BFM and BCI shared interrelated operations, had centralized control of labor relations, shared a common management, and shared a common ownership or financial control, and therefore, they may be collapsed to make one employer. Accordingly, we conclude that the district court did not err in determining that BFM and BCI were a "common enterprise" and, therefore, were

employers under the age discrimination act. Defendants were subject to the terms of the age discrimination act. We conclude there is no merit to this assignment of error.

### (c) District Court Properly Denied Defendants' Motion for Directed Verdict

For their next assignment of error, defendants claim that the district court failed to find that Billingsley "failed to sustain his burden of proof because of Defendants' articulation of legitimate nondiscriminatory reasons for [Billingsley's] termination from employment so that no reasonable jury could have returned a verdict for [Billingsley]." We interpret this assignment to mean that defendants assign as error the district court's denial of their motion for a directed verdict. We conclude that the district court did not err in overruling defendants' motion for a directed verdict, and accordingly, we find this assignment of error to be without merit.

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000); *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000). A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *McLain, supra; Lackman v. Rousselle*, 257 Neb. 87, 596 N.W.2d 15 (1999). The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *McLain, supra; Alexander v. Warehouse*, 253 Neb. 153, 568 N.W.2d 892 (1997). In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every

controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *McLain, supra*; *Lackman, supra.*

Defendants argue that they adduced evidence of legitimate nondiscriminatory reasons as to why Billingsley's employment was terminated and that, therefore, no reasonable jury could have returned a verdict for Billingsley. In cases arising under the age discrimination act, we have held that

> "although the ultimate burden of persuasion by a preponderance of the evidence at all times remains with the plaintiff, the method of proof is for the plaintiff to prove a prima facie case; if the plaintiff succeeds in so doing, the defendant has the burden of articulating some legitimate, nondiscriminatory reason for its action. Should the defendant succeed in so doing, the plaintiff must establish by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."
>
> . . . See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). (As recently clarified in *St. Mary's Honor Center v. Hicks*, [509] U.S. [502], [113] S. Ct. [2742], 125 L. Ed. 2d 407 (1993), *McDonnell Douglas Corp.* allocates the burden of production and the order for the presentation of the evidence; the ultimate burden of persuasion, however, rests on the plaintiff.)

*Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 878, 503 N.W.2d 211, 217 (1993) (quoting *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988)).

We have stated that to establish a prima facie case of age discrimination, the plaintiff must establish that (1) he or she was in the protected group, (2) he or she was subjected to an adverse employment action, (3) he or she was qualified for the position, and (4) the person who received the position was outside of the protected group. *Humphrey, supra*. The ultimate issue is whether age was a determining factor in the employer's decision. *Id.*

In *Humphrey*, the plaintiff claimed on appeal that the trial court erred in not directing a verdict in his favor on his claim of

age discrimination. We reviewed the record and determined that the evidence was in dispute and presented an issue as to whether the employer had articulated legitimate, nondiscriminatory reasons for its decisions or whether those reasons were merely pretextual. We concluded that because of the dispute in the record, the trial court did not err in denying the plaintiff's motion for directed verdict. In *Humphrey*, we stated:

> The evidence was not such that reasonable minds could draw but one conclusion . . . . Because it is the prerogative of the jury, as the trier of fact, to resolve conflicts in the evidence and to determine the weight and credibility to be given to testimony of witnesses . . . the evidence clearly presented a submissible issue for the jury. The trial court thus properly denied Humphrey's motion for directed verdict . . . .

243 Neb. at 881-82, 503 N.W.2d at 219.

In the instant case, as in *Humphrey*, there was a conflict in the evidence. Although defendants introduced evidence of a legitimate, nondiscriminatory reason for Billingsley's termination, namely, performance issues, Billingsley introduced evidence from which a jury could determine that those reasons were merely pretextual. Billingsley's evidence included testimony that Dahlke stated an employee should be fired because "he's old. He's useless. He looks bad for the corporate image. . . . Get rid of that old man." Additionally, testimony indicated that Dahlke "wanted an entire new face-lift that would allow a younger look to the entire department" and employment decisions were made in accordance with this stated objective.

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). Our review of the record shows that the evidence in this case created an issue for the jury as to whether defendants had articulated legitimate, nondiscriminatory reasons for their decision to terminate Billingsley or whether those reasons were merely pretextual. As such, we conclude that the district did not err in denying the defendants' motion for directed verdict and submitting the case to the jury.

## 2. Billingsley's Cross-Appeal: Equitable Claims

On cross-appeal, Billingsley claims as his first assignment of error that the district court erred in denying him equitable relief on his age discrimination claim. Billingsley sought equitable relief in the form of front pay or reinstatement. We conclude that this assignment of error is without merit.

We noted in *Billingsley v. BFM Liquor Mgmt.*, 259 Neb. 992, 613 N.W.2d 478 (2000), that an age discrimination claimant was entitled to have a jury determine the lawfulness of the employer's conduct and the amount of claimed past damages and, thereafter, to have the district court consider any request for equitable relief. Because in *Billingsley*, the district court had not yet ruled on Billingsley's request for equitable relief prior to the appeal, we dismissed the appeal for lack of a final, appealable order. In setting forth this procedure for handling legal and equitable claims in an age discrimination case, we quoted with approval from *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093 (8th Cir. 1982), in which the U.S. Court of Appeals for the Eighth Circuit stated that in an age discrimination case,

"[a]fter the jury trial on the foregoing damages issues, the district court should reconsider [the plaintiff's] request for equitable relief . . . .

. . . Although the court below retains its discretion to consider all the circumstances in this case when it determines what equitable relief may be appropriate, it cannot base its decision on its own factual findings that conflict with those expressly made by the jury."

*Billingsley v. BFM Liquor Mgmt.*, 259 Neb. 992, 1001, 613 N.W.2d 478, 485 (2000). Accordingly, in an age discrimination case, when the district court considers the plaintiff's request for equitable relief, the district court cannot reject the jury's findings on whether the plaintiff was the victim of age discrimination, but it nevertheless retains discretion to consider all the circumstances in the case when it determines what equitable relief, if any, may be appropriate.

In the instant case, following this court's dismissal of *Billingsley, supra*, the district court considered Billingsley's request for equitable relief. After a hearing on Billingsley's equitable claims, the district court entered an order in which it

granted Billingsley's request for attorney fees and postjudgment interest, but denied him the relief of reinstatement or front pay. The district court explained its decision as follows:

> Based upon the over 4-year gap between Richard Billingsley's termination of employment, and his trial, and based upon the jury's computation of his wage claim and his age claim . . . the Court is persuaded that the verdicts which the jury reached were inclusive not only of Richard Billingsley's legal claims, but those matters which are included within Billingsley's pending request for equitable relief, save the claim for an attorney's fee and post-judgment interest running from the date of the jury's award.

Although the district court's opinion is somewhat unclear, we interpret this order to be a ruling that "[b]ased upon . . . his trial," Billingsley had not established that he was entitled to the relief of reinstatement or front pay. According to the order, the district court considered the jury's findings that defendants had terminated Billingsley on the basis of his age, and the district court was aware of the damages the jury had awarded Billingsley as a result of this unlawful discrimination. It thus appears that the district court "consider[ed] all the circumstances in this case" and then determined, in its discretion, that under the evidence, no equitable relief in the form of reinstatement or front pay was appropriate. See *Gibson*, 695 F.2d at 1101. Under our de novo standard of review, see *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000), we cannot say that the district court erred in its decision on Billingsley's claim for equitable relief. Accordingly, we find no merit to this assignment of error in Billingsley's cross-appeal.

### 3. REMAINING ASSIGNMENTS OF ERROR

We have considered defendants' and Billingsley's remaining assignments of error, and we conclude they are without merit.

### VI. CONCLUSION

For the reasons stated above, we affirm the decision of the district court.

AFFIRMED.