HARRY H. BURLING V. ESTATE OF GEORGE ALLVORD.

FILED DECEMBER 21, 1906. No. 14,047.

1. Decedent's Estate: CLAIMS: LIMITATIONS. A claim against the estate of a decedent, which had accrued or become absolute before the expiration of the time fixed by the court for filing claims, is barred if not filed within that time. Section 226, ch. 23, Comp. St.

2. Fraud: ACTION: LIMITATIONS. The claim of a vendee against the vendor of real estate for damages for false and fraudulent representations with respect to the title accrues immediately upon the perpetration of the fraud, and is not postponed to such time as he sustains actual loss.

3. Decedent's Estate: CLAIMS: LIMITATIONS. The fact that the claimant did not discover the fraud until after the expiration of the time fixed for filing claims against his vendor's estate does not extend the time for filing his claim, the nonclaim statute making no exception in favor of cases of that character.

ERROR to the district court for Gage county: WILLIAM H. KELLIGAR, JUDGE. Affirmed.

M. B. Davis, Samuel Rinaker and R. S. Bibb, for plaintiff in error.

E. O. Kretsinger, contra.

ALBERT, C.

At the date of his decease, which occurred some time previous to January 25, 1897, Coke A. Collett held a contract of sale for 80 acres of school land in Gage county, Nebraska. He was living on this land with his wife and an only child, Lulu May Collett, at the time of his death, the same being their homestead. January 25, 1897, his widow, who had again married and whose name was then Mary Connor, sold and assigned this school land contract to George Allvord, and in August, 1898, he sold and assigned the same to Harry H. Burling, the plaintiff herein, for $2,000, subject to the amount still due the state Mrs. Connor, the former wife of Coke A. Collett, died

on March 25, 1897, previous to the assignment by All-
vord to the plaintiff. Some time after this assignment
Allvord died, an administrator of his estate was duly ap-
pointed, and the probate court entered an order, in accord-
ance with the provisions of section 217, ch. 23, Comp. St.
1903, requiring all claims against his estate to. be filed
within six months from May 4, 1900, of which due notice
was given. It is conceded that Collett died intestate, and
that his widow never obtained any order of court for the
sale and transfer of the school land contract made to
Allvord. From this statement it will be seen that on
Collett's death his widow became possessed of a life estate
in the 80 acres of school land covered by the land contract,
and that the remainder descended to his daughter and only
heir. Section 17, ch.. 36, Comp. St. Her assignment to
Allvord conveyed, therefore, only her life estate, and this
was extinguished by her death March 25, 1897, and pre-
vious to the assignment made by Allvord to the plaintiff.
Such assignment, therefore, conveyed no title to the plain-
tiff, but, as we understand from the record, he took. and
held possession up to February, 1902. Some time previous
to February 7, 1902, Lulu May Collett, who had then at-
tained her majority, asserted title to the land and em-
ployed an attorney to bring proceedings to recover pos-
session. On being notified of this .claim, the plaintiff,
accompanied by his attorney, went to Fairbury, where Miss
Collett was then residing, and purchased her title, paying
therefor the sum of $1,400. April 17, 1902, the plaintiff
filed his claim against the estate of George Allvord for the
sum of $1,400 paid to Miss Collett, and for a further sum
of expenses incurred in and about securing her title. It
will be seen that this claim was filed some 18 months after
the expiration of the time fixed by the probate court for
filing claims. The probate court refused to allow the
claim, and the plaintiff appealed to the district court, al-
leging in his petition that at the time he took an assign-
ment of this contract Allvord falsely and fraudulently
stated and represented that he had good title to the con-

tract; that he possessed all the right, title and interest in and to the land described in and conveyed by said contract, and had good right and lawful authority to sell the same and the premises conveyed therein, subject only to the interest of the state of Nebraska which, it is conceded, was the sum remaining unpaid thereon, being about $500; that plaintiff relied on said representations, knew nothing to the contrary, and had no knowledge of the outstanding title until January, 1902. The district court held that the claim was barred, and on that theory directed a verdict for the estate. After perfecting an appeal, the plaintiff died, and the cause was revived in the name of his administratrix.

Is the claim barred? To find the answer to this question we must look, not to the general statute of limitations fixing the time within which actions may be brought, but to the specific provisions of the decedent act limiting the time for filing claims against estates of deceased persons. Section 226, ch. 23, Comp. St., as it stood prior to its amendment in 1901, is as follows: "Every person having a claim against a deceased person proper to be allowed by the judge or commissioners, who shall not, after the giving of notice as required in the two hundred and fourteenth section of this chapter, exhibit his claim to the judge or commissioners, within the time limited by the court for that purpose, shall be forever barred from recovering such demand or from setting off the same in any action whatever." This section was amended in 1901 so as to include claims of every character, "whether due or to grow due, whether absolute or contingent." From our recital of the facts it will be seen that the claim was filed long after the expiration of the time fixed by the probate court for the filing of claims, and is unquestionably barred by the provisions of section 226, *supra*, unless there be some other provision of the statute governing the case.

It is contended, however, that Burling's claim did not accrue or become absolute until he bought the outstanding title of Lulu May Collett in order to avoid eviction, and,

consequently, that the claim falls within the provisions of section 262, ch. 23, Comp. St., which is as follows: "If the claim of any person shall accrue or become absolute at any time after the time limited for creditors to present their claims, the person having such 'claim may present it to the probate court, and prove the same at any time within one year after it shall accrue or become absolute; and if established in the manner provided in this subdivision, the executor or administrator shall be required to pay it, if he shall have sufficient assets for that purpose, and shall be required to pay such part as he shall have assets to pay, and if real or personal estate shall afterwards come to his possession, he shall be required to pay such claim, or such part as he may have assets sufficient to pay, not exceeding the proportion of the other creditors, in such time as the probate court may prescribe." Whether the amendment of sec. 226, *supra*, in 1901, operates as a repeal by implication of sec. 262, and, if so, whether plaintiff's claim, growing out of a transaction antedating such repeal, is affected thereby, are questions admitting of some doubt, but we do not deem it necessary to go into them, because we are satisfied that the claim is not one that accrued or became absolute after the expiration of the time limited for creditors to file their claims. It should be kept in mind that the claim is not for a breach of covenant of title or seisin, but for damages for alleged false and fraudulent representations. If it were the former, then the authorities holding that no right of action accrues until an eviction, actual or constructive, would be in point. But the claim is founded on alleged false and fraudulent representations made by Allvord with respect to his title. The alleged wrong was fully perpetrated when Burling parted with his money on the strength of such representations. The authorities are nearly uniform that in cases of this character a cause of action arises at once upon the perpetration of the fraud. In the well-considered case of *Northrop v. Hill*, 57 N. Y. 351, it was said:

"When a party to a contract is guilty of fraud, he com-

mits a wrong for which he is liable to the defrauded party, to pay, at least, nominal damages. The act of entering into contract relations implies that the parties are to deal in good faith with each other. On no other basis can the minds of the parties be expected to meet. If one of them, professing in this way to act in good faith, in fact, commits a fraud, he breaks the implied obligation he is under, and should be made to respond in damages. It is no answer to say that the defrauded party may rescind the contract. That course is at his option.' He may elect to affirm it, and have his action for such damages as he may prove, whether substantial or otherwise. If he proves no special damage, he should, at least, recover nominal damages for the breach of the implied promise to act in good faith. It is familiar law that a party may have an action for breach of duty, though he sustains no positive damage and there is no intention to do wrong."

In support of this rule the court quotes from the case of *Allaire v. Whitney*, 1 Hill (N. Y.), 848, as follows: "Once established, therefore, that in all matters of pecuniary dealings, in all matters of contract, a man has a *legal right to demand that his neighbor shall be honest*, and the consequence follows, viz., if he be drawn into a contract by fraud, this is an injury actionable *per se*. Indeed it would not be difficult, in all such cases, to show the degree of actual damage. The time of the injured party has been consumed in doing a vain thing, and time is money. * * * Fraud is a thing grievously amiss, and, above all, odious to the law; and fraud in a contract can hardly be conceived without being attended with damage in fact."

The plaintiff undoubtedly had an action for damages when the fraud was perpetrated. That he did not and could not know the full damages he might sustain at the time does not alone toll the statute until the full consequences are known. In the leading case of *Betts v. Norris*, 21 Me. 314, 38 Am. Dec. 264, this question was thoroughly

examined, and the courts of this country have followed
that decision with great unanimity. The action was one
against a deputy sheriff for nonfeasance in not attach-
ing sufficient property in favor of the plaintiff to satisfy
a judgment afterwards recovered thereon. It was there
argued, as here, that the cause of action did not accrue
until it was ascertained what damage had been sustained.
In answer to this the court said:

"In the case at bar, whether the defendant, by not at-
taching more property, did the plaintiff a wrong, depended
upon the amount of his debt. That amount did not depend
on any subsequent proceeding. It was the same at the
time he commenced his suit for it, that it was at the ren-
dition of judgment; with the exception of the damage for
the detention of the debt. The wrong done to the plain-
tiff, therefore, occurred when the nonfeasance took place,
and not when it came to be ascertained, by subsequent
events, what the precise amount of the injury turned out
to be."

If we are right in supposing that the plaintiff had a
cause of action when the contract was closed and the
money paid, there can be no doubt that the bar of the
statute then commenced to run in favor of the defendant,
unless saved by the exception relating to a nondiscovery
of the fraud. In Wood, Limitations (3d ed.), sec. 177, it
is said: "In the case of torts arising *quasi ex contractu*,
the statute usually commences to run from the date of the
tort, not from the occurrence of actual damage.' And at
sec. 178, he further states the rule as follows: "Although,
as has been seen, time commences usually to run in de-
fendant's favor from the time of his wrongdoing, and not
from the time of the occurrence to the plaintiff of any
consequential damage, yet in order to produce this result
it is necessary that the wrongdoing should be such that
nominal damages may be immediately recovered." In his
brief the plaintiff has cited cases to the effect that, on a
sale of personal property where possession was delivered,
it is no defense to an action for the price that the vendor

had no title to the property sold, as long as the vendee is not disturbed in his possession of the property. *Linton v. Porter*, 31 Ill. 107; *Webster v. Laws*, 89 N. Car. 224; *Gross v. Kierski*, 41 Cal. 111, and *Close v. Crossland*, 47 Minn. 500. Those cases, we think, have no application here. In every sale of personal property there is an implied warranty on the part of the vendor that he has good title to the same. Until breach of warranty by the assertion and enforcement of a superior title the vendee has no cause of action. His action, then, is upon contract, upon the warranty of his vendor, and no cause of action can, in the nature of things, accrue until a breach of the warranty. Here the action is for a tort, for the fraud committed. The distinction between the cases is radical and obvious.

But it is contended on behalf of the plaintiff that the claim should not be held to have accrued or become absolute until the discovery of the fraud. The general statute of limitations expressly provides that actions for relief on the ground of fraud shall not be held to have accrued until the discovery of the fraud. But, as we have seen, this action is governed by the statute of nonclaim, and not by the general statute of limitations. The statute of nonclaim makes no exception in favor of claims grounded on fraud. The general rule, supported by an almost unbroken line of authorities, is that the statute of nonclaim runs in all cases and under all circumstances, unless otherwise provided. 8 Am. & Eng. Ency. Law. 1079; 18 Cyc. 471. There are exceptions to this rule, but none covering plaintiff's claim. The plaintiff's claim accrued and became absolute, within the meaning of the statute, during the lifetime of Allvord and does not, therefore, come within the provision of section 262 of the decedent act, but within the provisions of section 226, whereby all claims not filed against the estate within the time fixed by the probate court for the filing of claims are forever barred. We see no escape from the conclusion reached by the learned district court. We reach this conclusion with less reluctance, because of grave doubts

in our minds whether the plaintiff would be entitled to recover were the bar of the statute removed.

It is therefore recommended that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.