IN RE ESTATE OF C. E. WEINBERGER, DECEASED.
EDWARD HOOKER ET AL., APPELLEES, V. ESTATE OF
C. E. WEINBERGER, DECEASED, APPELLANT.
IN RE ESTATE OF C. E. WEINBERGER, DECEASED.
EDWIN H. HEFT ET AL., APPELLEES, V. ESTATE OF
C. E. WEINBERGER, DECEASED, APPELLANT.

279 N. W. 2d 849

Filed June 12, 1979.    Nos. 42200, 42201.

George H. Moyer, Sr., of Moyer, Moyer & Egley and Frederick M. Deutsch of Deutsch, Jewell, Otte, Gatz, Collins & Domina, for appellant.

Donald R. Treadway of Brower, Treadway & Bird, P.C., for appellees.

Heard before BOSLAUGH, McCOWN, CLINTON, and BRODKEY, JJ., and WINDRUM, District Judge.

McCOWN, J.

In these two consolidated cases the claimants filed contingent claims against the estate of a decedent for an anticipated breach of contract. The claims were filed after the time limited for creditors to present their claims and the issue is whether such claims were properly allowed. The county court found that the claims were contingent claims incapable of being exhibited within the time limited for creditors to file claims and ordered the executor to retain sufficient funds to pay the contingent claims when they became absolute. On appeal the District Court affirmed the action of the county court. The personal representative of the decedent's estate has appealed.

On January 19, 1970, Edward Hooker and his wife, Myrtle, entered into a contract with C. E. Weinberger to purchase certain farmland in Greeley County, Nebraska. On February 9, 1970, Edwin Heft and his wife, Gloria M., also entered into a contract with C. E. Weinberger for the purchase of certain described farmland in Boone County, Nebraska. C. E. Weinberger was married at the time the contracts were executed and his wife, Viola Weinberger, did not sign the contracts. Relevant terms of both contracts are the same. Each contract required a downpayment of 29 percent of the total purchase price by a specified day in March 1970, and annual installment payments of principal and interest on March 1 of each year thereafter until March 1, 1981, at which time the final installment was due. The seller agreed

to furnish a merchantable abstract of title as soon as possible and to submit it to the buyers for examination and approval. The contracts provided that after the real estate title was examined the abstracts were to be kept in the possession of the attorney for the seller and were to be delivered to the purchasers upon the completion of all payments of interest and principal due under the contracts. The seller agreed to convey by warranty deed, including homestead rights, free and clear of encumbrances, and the contracts provided that the deeds were to be delivered "as soon as title is approved and the entire principal and interest paid."

The contracts were drawn by Raymond P. Medlin, Jr., who represented the seller and notarized the signatures of all parties. The Hookers and Hefts were not represented by counsel. Medlin rendered a title opinion to the purchasers on March 1, 1971, showing that the purchasers had merchantable title.

Subsequent to the execution of the contracts the purchasers took possession and have farmed and improved the land and have had undisturbed possession and quiet enjoyment to the present time. Purchasers have paid all taxes and made all annual installment payments required by the contracts to and including the March 1, 1977, installment. The 1971 payment was paid to and accepted by C. E. Weinberger and subsequent payments were paid to and accepted by the personal representative of the Weinberger estate until December 1977, when the March 1, 1977, payment was returned to the purchasers.

C. E. Weinberger died testate February 19, 1972, and Raymond P. Medlin, Jr. was appointed executor. The final date for filing claims of creditors against the estate was July 17, 1972, and decree barring claims was entered July 18, 1972. No notice of probate or of the date for filing claims was given to the purchasers. In December 1972 the decedent's widow, Viola Weinberger, elected to renounce the

will and take her statutory share of the decedent's property. The purchasers received no notice of the election, and had no notice of any prospective breach of contract until the late summer or early fall of 1975, when the purchasers here learned that Viola Weinberger had filed a partition action against a purchaser of other real estate under a similar installment sales contract executed by C. E. Weinberger. In that partition action Viola Weinberger alleged she was the sole owner of an undivided one-half interest in the property involved.

Because of the action of Viola Weinberger and statements of her counsel, purchasers filed contingent claims in the estate of C. E. Weinberger on September 25, 1975. The claims alleged the facts recited above and copies of the contracts were attached. The purchasers also alleged that the purchasers would have a contingent cause of action against the estate for any and all damages occurring by reason of any future action of Viola Weinberger and by reason of the fact that the title was not merchantable.

Raymond P. Medlin, Jr., as executor of the estate, filed an answer and objections to the claims alleging that the purchasers had knowledge of the death of the decedent, and that their claims were barred under the statutes because they were not presented by July 17, 1972, nor within 2 years after the death of the decedent, or February 19, 1974. The answer also alleged that the claims were not contingent and prayed that they be denied.

On January 13, 1976, after hearing and submission of briefs, the county court found that the claims were contingent claims not capable of being exhibited within the time limited for creditors to present their claims; allowed the claims; and ordered the executor to retain in his hands sufficient funds to pay these contingent claims when they became absolute. The executor appealed to the District Court.

Meanwhile, Viola Weinberger died in 1975, and

Henrietta Martensen was appointed executrix of her estate. In August 1976, the heirs of Viola Weinberger filed a partition action against Edward Hooker and his wife, and in November 1976, they filed a partition action against Edwin H. Heft and his wife.

On March 14, 1977, Raymond P. Medlin, Jr., resigned as executor of the C. E. Weinberger estate and Ralph E. Brown was appointed as administrator de bonis non and substituted as appellant in the District Court. On May 24, 1978, the District Court affirmed the action of the county court. The personal representative of the C. E. Weinberger estate has appealed.

The estate contends that the purchasers' claims are general rather than contingent claims; that the liability of the estate was fixed at the time the contracts were entered into; and that these claims should have been exhibited within the time limited for creditors to present their claims. The estate also contends that even if the claims here are contingent claims, they were not presented within 1 year after the claims became absolute.

The purchasers contend that the claims involved here are contingent claims and that a cause of action based upon a possible future breach of the contract or of title warranties does not accrue until an actual or anticipatory breach occurs; that a cause or right of action accrues so as to start the running of a statute of limitations when the right to institute and maintain the action arises and not before; and that under the provisions of section 30-704, R. R. S. 1943 (now repealed), if a claim not capable of being exhibited within the time limited for creditors to present their claims becomes absolute at any time thereafter, the person having such a claim may present and prove the same at any time within 1 year after the claim becomes absolute. Purchasers also assert that the doctrine of equitable estoppel should bar the estate from asserting any defense relating

to the time of filing the claims.

The controlling statutes here were sections 30-701 and 30-704, R. R. S. 1943, now repealed. Both sections dealt with contingent claims. Section 30-701 provided in part: "If any person shall be liable as security for the deceased, or have any other contingent claim against his estate which cannot be proved as a debt, the same may be presented, with the proper proof, to the county court, which, if satisfied that such claim is a legal demand against the estate, may order the executor or administrator to retain in his hands sufficient to pay such contingent claim, when the same shall become absolute, * * *."

Section 30-704 provided in part: "If the claim of any person not capable of being exhibited within the time limited for creditors to present their claims, shall become absolute at any time thereafter, the person having such claim may present it to the court, and prove the same at any time within one year after it shall become absolute; and if established in the manner provided in sections 30-701 to 30-715, the executor or administrator shall be required to pay it, * * *."

Under these statutes a contingent claim against a decedent's estate is one upon which the liability depends upon some future event which may or may not happen and which makes it uncertain whether it will ever be a liability. See, In re Estate of Golden, 120 Neb. 232, 231 N. W. 837; 31 Am. Jur. 2d, Executors and Administrators, § 283, p. 145.

The contingency does not relate simply to the amount which may be recovered but to the uncertainty of whether or not the future event will ever occur to thereby effect a right of action or liability. Until that future event happens a right of action upon the contingent claim does not arise. See Rehn v. Bingaman, 151 Neb. 196, 36 N. W. 2d 856.

In the cases now before us the only performance remaining to be done by the seller under the sale con-

tract, which was binding upon the heirs, executors, administrators, personal representatives, successors, and assigns of the decedent, was the delivery of a warranty deed to the purchasers conveying merchantable title to the premises. That performance was not required under the contracts until the purchasers completed payment for the land in 1981. At the time of the death of the decedent there was no breach of contract on the part of the seller, nor did the purchasers have any claim or cause of action against the decedent which could be presented or exhibited to the county court. A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury occasioned him, but not until then. See 1 Am. Jur. 2d, Actions, § 89, p. 618. Similarly, a cause of action on a covenant of warranty or for quiet enjoyment does not accrue in favor of the covenantee until eviction or surrender by reason of a paramount title. See, Campbell v. Gallentine, 115 Neb. 789, 215 N. W. 111; Burling v. Estate of Allvord, 77 Neb. 861, 110 N. W. 683.

In the present cases if Viola Weinberger had executed a warranty deed to the property before or after her husband's death, or had elected to take under the decedent's will or elected in some other way to carry out the contract, no cause of action would have arisen in favor of the purchasers against the estate of the decedent. The estate and the heirs and personal representatives succeeded to the rights and obligations of the decedent under the contract and until there was a breach of contract, or an anticipatory breach or repudiation of it, the purchasers had no cause of action or valid claim against the estate. There was no further performance due from the seller until 1981. An anticipatory breach of contract is one committed before the time has come when there is a present duty of performance and is the outcome

of words or acts evincing an intention to refuse performance in the future. See 17 Am. Jur. 2d, Contracts, § 448, p. 910.

Restatement 2d, Contracts, T.D. 9, § 274, p. 3, states when a statement or an act is a repudiation of a contract. "A repudiation is

"(a) a statement by the obligor to the obligee indicating that he will commit a breach that would of itself give the obligee a claim for damages for total breach under § 268, or

"(b) a voluntary affirmative act which renders him unable or apparently unable to perform without such a breach."

Comment (a), following, makes it clear that such a statement or act, even if it occurs before any breach by nonperformance, may give rise to a claim for damages for total breach.

Restatement 2d, Contracts, T.D. 9, § 277, p. 22, subsection (1) states: "(1) Where an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach."

In the cases now before us the record fails to establish that the purchasers had any notice or knowledge that Viola Weinberger had elected not to take under the will. The record establishes that the purchasers received no notice of any proceedings in the estate of C. E. Weinberger. Neither is there any evidence that any representative or attorney for the C. E. Weinberger estate advised the purchasers, prior to the filing of their contingent claims, that the estate could not or would not perform the contract. In fact, the executor continued to accept the annual contract payments from the purchasers even after the contingent claims of the purchasers were filed. Such an acceptance may well have constituted an equitable estoppel. In any event, the acceptance of payments without objection and with full knowledge

of all the facts was certainly not a repudiation of the contracts in any sense. The acceptance of such payments constituted an affirmance of the contracts, not a repudiation of them. Until the purchasers discovered that Viola Weinberger had instituted a partition action against other purchasers and by further inquiry obtained knowledge of a probable or apparent inability to comply with the title warranty provisions of the contract by the estate, they had no cause of action against the estate, contingent or otherwise.

Where a party bound by an executory contract repudiates his obligation before the time for performance, the promisee has an option to treat the contract as ended so far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach. Selig v. Wunderlich Contracting Co., 160 Neb. 215, 69 N. W. 2d 861. See, also, 17A C. J. S., Contracts, § 472, p. 652.

The record in the present cases establishes that the purchasers had contingent claims against the C. E. Weinberger estate which could not be proved as a debt or legal demand against the estate until the purchasers had knowledge of facts sufficient to constitute an anticipatory breach or repudiation of the contracts. The record also establishes that the claims were not capable of being exhibited within the time limited for creditors to present their claims, and that they were filed and presented to the court within 1 year after they became absolute.

The order of the District Court affirming the action of the county court was correct and is affirmed.

AFFIRMED.