IVAN EICHER AND DELORES EICHER ET AL., APPELLEES
AND CROSS-APPELLANTS, V. MID AMERICA FINANCIAL
INVESTMENT CORPORATION ET AL., APPELLANTS
AND CROSS-APPELLEES.

IVAN EICHER AND DELORES EICHER ET AL., APPELLEES,
V. MID AMERICA FINANCIAL INVESTMENT
CORPORATION ET AL., APPELLANTS.

702 N.W.2d 792

Filed August 12, 2005. Nos. S-03-1257, S-04-1184.

Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellants.

Mark C. Laughlin, Andrea F. Scioli, and Tamara D. Borer, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., and Catherine Mahern, of Creighton Legal Clinic, and D. Milo Mumgaard, of Nebraska Appleseed Center for Law in the Public Interest, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

These appeals result from a single action in which 13 individual plaintiffs sought damages based upon allegations of fraud, civil conspiracy, unjust enrichment, rescission, and violations of Nebraska's Consumer Protection Act and Uniform Deceptive Trade Practices Act. Plaintiffs claimed that while their homes were in foreclosure, defendants, Mid America Financial Investment Corporation (Mid America), Scott W. Bloemer, and Elaina Hollingshead, told them they would loan them money to save their homes from foreclosure but instead fraudulently obtained title to the homes. Following a bench trial, the district court for Douglas County found in favor of 10 of the 13 plaintiffs and granted relief in the form of rescission, damages, and attorney fees. Defendants below appeal from the court's judgment and separately appeal from a subsequent nunc pro tunc order involving the award of fees. The district court dismissed the claims of plaintiffs William Street and David Welton, who have cross-appealed by filing a notice of appeal of those dismissals. In plaintiff's brief on cross-appeal, a third issue affecting all plaintiffs is addressed. We consolidated the appeals and moved them to our docket on our own motion, pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## I. BACKGROUND

In May 2001, plaintiffs Ivan Eicher and Delores Eicher, Patrick Sweeney and Lois Sweeney, Emmett Gulley, Steven W. Starman, Street, Welton, and Don Novachich filed an action against Mid America, Bloemer, and Hollingshead. Subsequently, Jerry Gills,

Renee Righter, Lori Hill, and Jennifer Frans Griess were joined as additional plaintiffs in the operative third amended petition. Plaintiffs alleged that Bloemer and Hollingshead, acting through Mid America as their alter ego, conducted a fraudulent scheme in which they identified people whose homes were in foreclosure, approached them under the guise of loaning them money to stop the foreclosures, and then deceitfully acquired title to the homes by acquiring warranty deeds. Plaintiffs alleged they were victims of this scheme and prayed for relief, including rescission and reconveyance, damages, and attorney fees. Plaintiffs' action was based on multiple theories of recovery including fraud, civil conspiracy, unjust enrichment, and violations of the Consumer Protection Act (hereinafter CPA), Neb. Rev. Stat. §§ 59-1601 to 59-1622 (Reissue 1998 & Cum. Supp. 2000), and the Uniform Deceptive Trade Practices Act (hereinafter UDTPA), Neb. Rev. Stat. §§ 87-301 to 87-306 (Reissue 1999).

At a bench trial, plaintiffs testified that Bloemer and Hollingshead, acting on behalf of Mid America, offered to loan them money to stop foreclosure so that defendants could keep their homes, but never disclosed that defendants were actually taking title to the homes. Bloemer and Hollingshead testified to the contrary, asserting that the terms of the transaction were fully explained to each plaintiff and that each plaintiff understood that he or she was conveying title to the home to defendants. During the trial, the district court dismissed the claim of plaintiff Gills without prejudice because he did not appear and could not be located.

Following the bench trial, the district court entered an order, filed May 1, 2003, in which it dismissed the action with respect to plaintiff Street pursuant to a motion for partial summary judgment previously filed on behalf of defendants. In the same order, the court found the testimony of plaintiffs to be credible and the testimony of Bloemer and Hollingshead not credible. The court determined that defendants had engaged in a civil conspiracy to commit fraud and had fraudulently induced plaintiffs to enter into transactions of conveyance which were falsely represented as loans. The court further found that defendants had violated the CPA. It found defendants jointly and severally liable to all remaining plaintiffs except Welton. The court found that although

Welton was induced by the fraudulent actions of defendants to enter into the transaction with Mid America, he did not incur any damages. The court stated in its order that attorney fees were to be awarded under the CPA and scheduled a hearing date to determine the amount of the fees.

On June 17, 2003, the district court entered an order awarding attorney fees to the prevailing plaintiffs. The order made no reference to the CPA, but instead referred to the UDTPA as the basis for the award. After considering the time spent and reasonable hourly charge of plaintiffs' attorneys, the court awarded fees using a multiplier of 1.3 to arrive at a final amount. This resulted in plaintiffs' primary attorneys receiving a fee of $374,224.50, and their other attorneys receiving fees of $1,045.20 and $2,053.70, respectively.

Defendants filed a motion for new trial. Welton and Street filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. In addition, all plaintiffs filed a motion requesting the district court to clarify its prior orders by making specific findings of fact with respect to their claims under the UDTPA. All plaintiffs also asked the court to clarify that the award of attorney fees was pursuant to both the UDTPA and the CPA. The district court entered an order overruling the motions for new trial and specifically finding that plaintiffs were not entitled to relief under the UDTPA. From that order, defendants perfected a timely appeal and plaintiffs cross-appealed. The appeal and cross-appeal were docketed in this court as case No. S-03-1257.

While the parties were submitting appellate briefs to this court, plaintiffs filed a motion in the district court for an order nunc pro tunc declaring that the award of attorney fees was pursuant to the CPA and that the reference to the UDTPA was a clerical error. The court entered such an order on October 7, 2004, and defendants, who are the appellants herein, filed a timely appeal. That appeal was docketed in this court as case No. S-04-1184 and, as previously noted, consolidated with case No. S-03-1257.

Additional facts relevant to specific assignments of error are included in the analysis.

## II. ANALYSIS

### 1. APPEALS

#### (a) Severance

In defendants' first assignment of error, they contend that the district court erred in denying a pretrial motion to sever and separately try the claims of the individual plaintiffs. Whether claims should be joined for purposes of trial is within the discretion of the district court. See *Mondelli v. Kendel Homes Corp.*, 262 Neb. 663, 641 N.W.2d 624 (2001) (supplemental opinion). Accordingly, we review the district court's overruling of the motion to sever for abuse of discretion.

Neb. Rev. Stat. § 25-705 (Cum. Supp. 2004) provides in relevant part:

> (1) This section applies when an action involves multiple parties or more than one cause of action.
>
> . . . .
>
> (3) The court may . . . order separate trials or make other orders to prevent delay or prejudice.
>
> . . . .
>
> (5) Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

The relevant joinder statute, Neb. Rev. Stat. § 25-311 (Cum. Supp. 2004), provides:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Defendants contend that the "same transaction, occurrence, or series of transactions or occurrences" requirement of § 25-311 is not met in this case and that the trial court's failure to sever plaintiffs' claims was prejudicial to them.

The record does not reflect either misjoinder or prejudice resulting from denial of the motion to sever. The operative petition alleged and the evidence presented at trial generally demonstrated that each plaintiff asserted the same causes of action against defendants. Each plaintiff alleged that his or her right to relief arose out of the same series of transactions occurring between September 1997 and June 2000, in which defendants told plaintiffs they would loan them money in order to stop the foreclosure of their homes. Plaintiffs generally alleged and testified that Bloemer and Hollingshead never told them they would be selling their homes to Mid America. Plaintiffs alleged and testified that they were told they were signing loan documents and did not realize that defendants were actually presenting them with purchase agreements. Due to the similar nature of all the transactions, joinder of the claims was proper, particularly in a bench trial where there is no concern about jury confusion and it is presumed that the court considered only competent and relevant evidence in rendering its decision. See *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996). Defendants' first assignment of error is without merit.

(b) Pretrial and Trial Procedures

■ In defendants' second assignment of error, they contend that the district court "erred in its pretrial and trial handling of the case." To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error. *In re Petition of Omaha Pub. Power Dist.*, 268 Neb. 43, 680 N.W.2d 128 (2004). We therefore address only that argument in defendants' brief which is specifically directed to this assignment, namely, that the district court's pretrial orders and trial scheduling did not allow defendants sufficient time to prepare for trial. Because a trial judge has broad discretion over the general conduct of a trial, we review this assignment of error for abuse of discretion. See *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991).

As noted, this action was commenced in May 2001. The record reflects that plaintiffs served discovery requests some time prior to August 28 of the same year. In November and again

in December 2001, plaintiffs sought to take the depositions of Bloemer and Hollingshead, but were unsuccessful in obtaining dates on which these defendants would agree to appear for deposition. Defendants first served discovery requests on plaintiffs in December 2001. Plaintiffs responded in part in January 2002.

The district court conducted a hearing on pending discovery issues and other matters on January 4, 2002. At that hearing, counsel for defendants suggested that the depositions could be scheduled in the latter part of January, and the court ordered that they be scheduled by February 15. On January 30, the court scheduled the trial to commence on May 13. The court later clarified for the record that it set the date partly based upon its concern that the nature of the case, which involved foreclosures and evictions, demanded a speedy trial in order to protect the interests involved.

Apparently due to a pending criminal case involving Bloemer and Hollingshead, their depositions were not taken in this case until late April 2002. It appears that no request was made by defendants to depose any of the plaintiffs until April 2002. On May 3, the district court granted defendants' motion for continuance in part and continued the first day of trial to May 15. It scheduled various trial days from May 15 through 23 and from June 17 through 28 and permitted discovery to continue through June 14.

Under case progression standards adopted by this court, trials in nonjury civil cases are to be held within 1 year from the date of filing, although a longer interval may be approved where deemed necessary because of extraordinary eventualities, such as exceptionally complicated discovery. See Neb. Ct. R. of Case Progression Standards (rev. 2000). The trial of this case began exactly 1 year after the initial petition was filed. From our review of the record, we conclude that the district court made reasonable efforts to accommodate the stated needs of the parties for discovery and trial preparation while at the same time insisting that the case be resolved in a timely manner consistent with the standards promulgated by this court. We conclude that the district court did not abuse its discretion in its pretrial rulings regarding case progression or in setting the case for trial.

## (c) Fraud

■ In defendants' third assignment of error, they contend that the district court erred in finding in favor of plaintiffs on their claims that they were fraudulently induced to sell their homes to Mid America. To recover on a fraudulent misrepresentation claim, one must show (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that it should be relied upon; (5) that the party reasonably did so rely; and (6) that he or she suffered damage as a result. *Agri Affiliates, Inc. v. Bones*, 265 Neb. 798, 660 N.W.2d 168 (2003). In this case, there was conflicting evidence as to the representations made to each plaintiff in connection with the disputed transactions. The district court made a specific finding that the testimony of the individual plaintiffs was credible and that the testimony of the individual defendants was not. In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998); *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813 (1997). Thus, we give deference to the district court's findings that plaintiffs were induced to sign documents conveying their property based upon defendants' knowingly false representations that the transactions were loans; that the false representations were made with the intent that plaintiffs would rely upon them; and that to their detriment, plaintiffs did in fact rely on the false representations.

Although defendants do not directly challenge these factual findings on appeal, they argue that each plaintiff signed contractual documents which "unmistakably disclose the nature of the transaction as a 'sale' rather than a 'loan.' " Brief for appellants at 22. Defendants contend that these written contracts were binding, based upon the rule that "[o]ne who signs an instrument without reading it, when he can read and has the opportunity to do so, cannot avoid the effect of his signature merely because he was not informed of the contents of the instrument." See *Bock v. Bank of Bellevue*, 230 Neb. 908, 916, 434 N.W.2d 310, 316 (1989). They

further contend that because plaintiffs had the contract documents available for review, plaintiffs could not have reasonably relied on any verbal misrepresentation. See *Schuelke v. Wilson*, 250 Neb. 334, 549 N.W.2d 176 (1996).

 The general rule that one who fails to read a contract cannot avoid the effect of signing it applies only in the absence of fraud. See, *Mayer v. Howard*, 220 Neb. 328, 370 N.W.2d 93 (1985); *Day v. Kolar*, 216 Neb. 47, 341 N.W.2d 598 (1983). Restated, the rule that one who signs a contract is bound by its terms

> does not apply where the controversy is between the parties and the execution of the instrument was induced by fraud.
>
> The doctrine that the carelessness or negligence of a party in signing a writing estops him from afterwards disputing the contents of such writing is not applicable in a suit thereon between the original parties thereto when the defense is that such writing, by reason of fraud, does not embrace the contract actually made.

*West v. Wegner*, 172 Neb. 692, 694, 111 N.W.2d 449, 451 (1961). Because the district court specifically found that each of the plaintiffs was fraudulently induced to sign what were misrepresented as loan documents, the general rule binding a party to a signed contract does not apply.

Moreover, defendants' reliance on *Schuelke, supra*, is misplaced. In that case, a buyer of a business contended that the seller made certain fraudulent misrepresentations regarding the anticipated profitability of the business and that he was therefore entitled to rescission. However, the record reflected that the seller stated that his financial projections were approximations and urged the buyer, during negotiations, to have the information verified. The buyer did not do so. Under these circumstances, we determined that there was no fraudulent intent or reasonable reliance. Defendants attempt to analogize the present case to *Schuelke* by contending that because plaintiffs had access to the contract documents, any reliance on a representation made by defendants was not reasonable. Clearly, however, the basis of plaintiffs' action in this matter is that they were induced to sign the contract documents based upon assertions that the documents contained merely loan terms, when in fact

they constituted conveyances. Under these circumstances, the rationale of *Schuelke* is entirely inapplicable.

Defendants also argue that the fraud claims should fail because their misrepresentations were not shown to have proximately caused plaintiffs' claimed damages. Specifically, they contend that the undisputed evidence established that even without the transaction with Mid America, all of the plaintiffs would have lost their homes in foreclosure and that in such an action, plaintiffs would have received no distribution of the equity in their homes. Plaintiffs generally testified that although their options were limited, they would have considered other alternatives to save their homes from foreclosure if the opportunity with Mid America had not presented itself. We conclude that this evidence was sufficient to establish that the damages claimed were proximately caused by defendants' conduct. Defendants' third assignment of error is without merit.

### (d) Civil Conspiracy

■ In defendants' fourth assignment of error, they argue that the district court erred in finding in favor of plaintiffs with respect to their allegations of civil conspiracy. When reviewing the sufficiency of the evidence to sustain a judgment, every controverted fact must be resolved in favor of the successful party, and such party is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001).

■ A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813 (1997); *Wiekhorst Bros. Excav. & Equip. v. Ludewig*, 247 Neb. 547, 529 N.W.2d 33 (1995). The gist of a civil conspiracy action is not the conspiracy charged, but the damages the plaintiff claims to have suffered due to the wrongful acts of the defendants. *Wiekhorst Bros. Excav. & Equip., supra.*

■ To set forth a claim of conspiracy between a corporation and its corporate employees, the petition must allege that the latter are acting outside the scope of their authority or other than in the normal course of their corporate duties. *Dixon v. Reconciliation, Inc.*, 206 Neb. 45, 291 N.W.2d 230 (1980). The

operative petition alleged that Bloemer and Hollingshead formed and used Mid America, a Nebraska corporation, as a "conduit . . . to carry out the fraudulent scheme." Plaintiffs further alleged

> a unity of interest in ownership between Bloemer and Hollingshed [sic] and Mid America such that the individuality and separateness of Bloemer and Hollingshed [sic] and Mid America did not and do not exist and Mid America was and is the alter ego of Bloemer and Hollingshed [sic] and merely a conduit through which Bloemer and Hollingshed [sic] engaged in the herein scheme to defraud. Adherence to the fiction of the separate existence of Mid America would sanction fraud and promote injustice.

These allegations were sufficient to set forth a claim of conspiracy among all three defendants under the rule stated in *Dixon, supra.*

The district court found that defendants "were involved in a civil conspiracy to defraud each of the Plaintiffs," resulting in their joint and several liability. Defendants challenge this finding, arguing that the evidence did not establish that Bloemer and Hollingshead acted outside the scope of their authority with the corporation. Viewing the evidence in a light most favorable to plaintiffs, we conclude that this argument is without merit. The record supports the allegation that the individual defendants acted outside any legitimate scope of corporate employment by utilizing the corporate entity as part of a scheme to defraud third parties.

### (e) Attorney Fees

In defendants' fifth and final assignment of error, they argue that the trial court erred in awarding attorney fees to plaintiffs. As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Destiny 98 TD v. Miodowski,* 269 Neb. 427, 693 N.W.2d 278 (2005); *Kansas Bankers Surety Co. v. Halford,* 263 Neb. 971, 644 N.W.2d 865 (2002). When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *In re Estate of Stull,* 261 Neb. 319, 622 N.W.2d 886 (2001); *Barnett*

*v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998). Defendants challenge both the statutory basis and the amount of the attorney fee award.

### (i) Statutory basis

In its initial order entered following trial, the district court held that defendants' conduct violated the CPA as to each plaintiff who was awarded damages and that "[d]amages are awarded under the [CPA] in the form of attorney fees" in an amount to be determined at a later date. However, in its order following the subsequent hearing, the court referred to a provision in the UDTPA which permits an award of attorney fees to a prevailing party. This order triggered the confusing sequence of events which ultimately generated subsequent orders and the consolidated appeal docketed as case No. S-04-1184.

The district court's initial order after trial included a specific determination that the prevailing plaintiffs were entitled to an award of attorney fees under the CPA, which specifically permits such an award. See § 59-1609. The only issue left open was the amount of the fees to be awarded. Accordingly, we treat the award as having been made pursuant to § 59-1609 and reject defendants' argument that there is no statutory basis for the award. Our disposition of this issue eliminates any need to reach the issues raised in case No. S-04-1184, and renders such issues moot.

### (ii) Amount

With respect to the amount of the fee award, defendants argue that the "lodestar multiplier" utilized by the district court is not recognized in Nebraska and that our law requires the district court to consider the nature of the proceeding, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. See, *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001); *Schirber v. State*, 254 Neb. 1002, 581 N.W.2d 873 (1998).

It is true that this court has never specifically approved the "lodestar multiplier" approach to calculating court-ordered attorney fees. However, defendants' brief does not include any argument as to why we should not do so, and plaintiffs provide no reasons why we should. Accordingly, we apply the standards articulated in *In re Guardianship & Conservatorship of Donley, supra,* and *Schirber, supra,* in our review of whether the fee award constitutes an abuse of discretion.

At the hearing on attorney fees, the court received affidavits offered on behalf of plaintiffs which generally detailed the amounts of time their attorneys devoted to the case, as well as expenses they incurred. Also received was a contingency fee agreement with one of the plaintiffs which was represented as being similar to that entered into with all other plaintiffs. Plaintiffs also requested that the court take judicial notice of trial testimony related to each plaintiff's ability to pay a fee and the risk undertaken in the representation.

The affidavit of plaintiffs' lead counsel reflected 2,589 hours of billable time by various persons in his law firm for a total of $294,907.50 in fees before application of any multiplier. In its fee award, the district court reduced this amount to $287,865 before applying a multiplier of 1.3 to arrive at a fee award of $374,224.50. Using the same method of calculation, the court awarded fees of $1,045.20 and $2,053.70 to two other attorneys who had represented plaintiffs in the case.

The time and labor devoted by attorneys to the case and the customary charges for such services are two of the factors to be considered in arriving at a fee award under our case law. Defendants take no exception to these factors, as reflected in the affidavits and the district court's calculations, and we conclude that they are reasonable. Thus, the principal issue is whether the district court abused its discretion in awarding a fee which was 30 percent greater than the product of the hours devoted to the case multiplied by customary hourly charges. To resolve that issue, we consider the other factors which may form the basis of a court-ordered attorney fee under existing Nebraska law, which include the nature of the litigation, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence

exhibited, the result of the suit, and the character and standing of the attorney. See, *In re Guardianship & Conservatorship of Donley, supra*; *Schirber, supra.*

The record reflects that plaintiffs' attorneys were members of the Nebraska bar and experienced in civil litigation. This case involved multiple plaintiffs, three defendants, and multiple theories of recovery. At stake was title to the homes of the plaintiffs, many of whom were persons of modest income and means. The financial responsibility assumed by plaintiffs' counsel was substantial. Lead counsel represented each plaintiff on a "fully-contingent basis," advancing all costs. Each plaintiff agreed to pay the greater of the total fees at the standard hourly rates or 33⅓ percent of the amounts recovered if the court awarded attorney fees. Plaintiffs' lead counsel averred that none of the plaintiffs had the financial resources to pay attorney fees and costs if they had been unsuccessful in the litigation. Although the legal issues in the case were not particularly complex, there was a significant amount of evidentiary material presented to the district court in an organized and cogent manner. The record indicates that plaintiffs' counsel were diligent and effective in presenting plaintiffs' case, and they obtained a favorable result for the successful plaintiffs. Based upon these factors, we conclude that the district court did not abuse its discretion in awarding attorney fees to plaintiffs' counsel in the amounts indicated above.

## 2. Cross-Appeal

### (a) William Street

Prior to trial, defendants filed a motion for partial summary judgment with respect to the claim of Street. A hearing on the motion was held, at which time evidence was received in support of and in resistance to the motion. For reasons which are not entirely clear from the record, the court did not rule on the motion prior to trial. After the trial was concluded, but before the court announced its decision, the motion was renewed and another hearing was held, at which time the court received additional evidence on the motion, including Street's trial testimony. In its subsequent order setting forth its decision following trial, the district court sustained the motion for partial summary judgment after determining that Street's claim was barred by res

judicata and collateral estoppel, because the facts and issues previously litigated in Street's bankruptcy were "identical to the facts and issues of this case." Street cross-appeals from the order granting partial summary judgment which resulted in the dismissal of his claim.

 Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Olson v. Le Mars Mut. Ins. Co.*, 269 Neb. 800, 696 N.W.2d 453 (2005); *Johnson v. United States Fidelity & Guar. Co.*, 269 Neb. 731, 696 N.W.2d 431 (2005). The applicability of the doctrines of res judicata and collateral estoppel is a question of law. *Moyer v. Nebraska City Airport Auth.*, 265 Neb. 201, 655 N.W.2d 855 (2003); *Billingsley v. BFM Liquor Mgmt.*, 264 Neb. 56, 645 N.W.2d 791 (2002). On questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Billingsley, supra.*

The record reflects that in 1998, Street and his wife filed an adversary proceeding complaint against Mid America in their chapter 13 bankruptcy action pending in the U.S. Bankruptcy Court for the District of Nebraska. The complaint generally alleged that the transfer of ownership of the Streets' residence to Mid America was for "less than a reasonable [sic] equivalent value for the property transferred" and was thus fraudulent pursuant to 11 U.S.C. § 548 (2000) and should be avoided. Mid America moved for summary judgment, arguing that the Streets lacked standing under 11 U.S.C. § 522(h) (2000) to bring the action. In support of its motion, Mid America offered the affidavit of Hollingshead, in which she averred that the Streets agreed to sell their property for the total sum, including assumed mortgages, of $48,468.48. In opposition, Street offered his affidavit in which he averred that he did not "realize that he may have transferred the real property to Mid-America" and that Mid America "told him that they would stop the foreclosure[, that] the payments would be made to Mid-America[, and] that the payment due in June of 1998 would be paid at the end of the loan." Street also averred that "[a]t the time of the sale [he was] handed

paperwork and told to sign it" and that he "had no choice regarding signing the paperwork nor was the paperwork explained to him." Street's wife offered a similar affidavit.

Pursuant to 11 U.S.C. § 522(h), a debtor in a bankruptcy proceeding may avoid a transfer of property if, inter alia, the trustee could avoid the transfer under 11 U.S.C. § 548 but declines to do so. See, generally, *In re Merrifield*, 214 B.R. 362 (B.A.P. 8th Cir. 1997). A trustee may avoid a transfer under 11 U.S.C. § 548 if the debtor "voluntarily or involuntarily" received "less than a reasonably equivalent value in exchange for such transfer or obligation" and meets certain other criteria. Courts have interpreted 11 U.S.C. § 522 as imposing only limited avoidance powers on debtors, as the code generally entrusts such powers to the bankruptcy trustee. See *In re Merrifield, supra*. Specifically, a five-part test has been utilized to determine whether a debtor may personally exercise avoidance powers under § 522(h). *In re Merrifeld, supra*. Relevant to this case is the initial requirement that the debtor must demonstrate that the transfer of property was "involuntary." See *id*. at 365. If such a showing is lacking, the debtor lacks standing to bring the action. *Id*. In Street's bankruptcy proceeding, the bankruptcy court entered an order awarding summary judgment in favor of Mid America. The court determined that Mid America had made a prima facie showing that the transfer was voluntary, and that

> [t]he affidavits submitted by the [Streets] do not contain any assertions of facts from which the trier of fact could, if a trial was necessary, determine that the execution and delivery of the warranty deed was anything other than a voluntary action by the [Streets]. Therefore, the [Streets] do not meet the Merrifield test and they do not have standing to bring this action.

The doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Billingsley v. BFM Liquor Mgmt.*, 264 Neb. 56, 645 N.W.2d 791 (2002); *Lincoln Lumber Co. v.*

*Fowler*, 248 Neb. 221, 533 N.W.2d 898 (1995). The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action. *Lincoln Lumber Co., supra.* The doctrine rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. *Id.*

In order to constitute a bar to a subsequent action under the doctrine of res judicata, a judgment in a prior action must be on the merits in that action. See, *Billingsley, supra*; *Gruber v. Gruber*, 261 Neb. 914, 626 N.W.2d 582 (2001). A determination by a federal court that a party lacks standing to bring an action "is not 'on the merits' of the underlying substantive claim" for purposes of claim preclusion. *McCarney v. Ford Motor Co.*, 657 F.2d 230, 234 (8th Cir. 1981). Here, the bankruptcy court determined that Street lacked standing under federal bankruptcy law, and it therefore did not reach the merits of his fraudulent conveyance claim against Mid America. Because there was no prior judgment on the merits, we conclude that Street's claim in this action is not barred by the doctrine of res judicata.

■ Under the doctrine of collateral estoppel, or issue preclusion, when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a future lawsuit. *Woodward v. Andersen*, 261 Neb. 980, 627 N.W.2d 742 (2001); *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994). See, also, *Billingsley, supra.* There are four conditions that must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Woodward, supra.* In determining whether issues in a prior and subsequent action are "identical," we are guided by the following test:

"A former verdict and judgment are conclusive only as to the facts directly in issue, and do not extend to facts which may be in controversy, but which rest on evidence and are merely collateral. It must appear that the matter set up as a bar was in issue in the former case. The test as to whether

the former judgment is a bar generally is, whether or not the same evidence will sustain both the present and the former action." . . . "[Where] different proof is required, a judgment in . . . [the former action] is no bar to [the subsequent action.]"

(Citations omitted.) *Suhr v. City of Scribner*, 207 Neb. 24, 27-28, 295 N.W.2d 302, 304 (1980). See, also, *In re Interest of Marcus W. et al.*, 11 Neb. App. 313, 649 N.W.2d 899 (2002).

The issue addressed by the bankruptcy court was whether Street's transfer of his property to Mid America was involuntary. Although some of the evidence related to whether there was collusion involved, the issue of whether the transfer was involuntary for purposes of standing under the federal Bankruptcy Act does not equate with the issue of whether the transfer was induced by fraudulent representations on the part of Mid America, Bloemer, or Hollingshead. That precise issue was neither presented nor resolved in the bankruptcy litigation. Accordingly, the doctrine of collateral estoppel is inapplicable. Because Street's claim in this case was not barred by the judgment in the prior bankruptcy action under the doctrines of either res judicata or collateral estoppel, the district court erred in granting the motion for partial summary judgment dismissing his claim.

### (b) David Welton

The district court made the following findings and determination with respect to the claim of Welton:

Although the Court finds that David Welton entered into the transaction by fraud of the Defendants, the Court finds that . . . Welton did not incur any damages by the fraudulent actions of the Defendants. After the mortgage foreclosure was stopped by Mid America in April of 1999 for approximately $2,000.00, Plaintiff resided in the residence and paid Defendant approximately $500.00 per month. In March of 2001, Plaintiff moved out of this residence and moved into the residence of his mother. Soon thereafter, Plaintiff quit making payments to Mid America and then Mid America quit making the mortgage payments to the mortgage company, WMC of California. The mortgage company then proceeded with foreclosure. The Plaintiff was notified of the

foreclosure and the foreclosure sale was completed by the mortgage company. The Plaintiff had . . . personal property in the residence at the time of the foreclosure, which he did not recover. Any responsibility for that property would not have been with Defendants. As such, Plaintiff incurred no damages in this matter and judgment is not awarded to him as a result of the fraudulent actions of the Defendants.

In his cross-appeal, Welton contends that the district court erred in determining that he failed to prove damages. In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. An appellate court will not reweigh the testimony or reevaluate the credibility of the witnesses, but it will review the evidence to determine whether the trial court made findings which are clearly wrong. *Fu v. State*, 263 Neb. 848, 643 N.W.2d 659 (2002). The issue presented here is whether the district court was clearly wrong in determining that Welton had not incurred damages as a result of defendants' fraudulent conduct.

In an action for fraud, a party may recover such damages as will compensate him or her for the loss or injury actually caused by the fraud and will place the defrauded party in the same position as he or she would have been in had the fraud not occurred. *Forker Solar, Inc. v. Knoblauch*, 224 Neb. 143, 396 N.W.2d 273 (1986); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986). Damages claimed by Welton in this action included the loss of title to his home and his equity therein. The record reflects that immediately prior to the transaction with Mid America, Welton's home had a fair market value of between \$80,000 and \$89,000 and that the mortgage balance was between \$41,000 and \$46,000.

In *Burling v. Allvòrd*, 77 Neb. 861, 864, 110 N.W. 683, 684 (1906), an action for damages alleging fraudulent representations with respect to title of real property, this court held that "[t]he alleged wrong was fully perpetrated when [the plaintiff buyer] parted with his money on the strength of such representations." Here, Welton lost his title and equity in April 1999 when he deeded his home to Mid America on the basis of fraudulent misrepresentations that the transaction constituted a loan. After that point, Mid America characterized the monthly payments

which it received from Welton until August 2001 as "rental" payments. Welton's right to recover his equity lost in the April 1999 transaction is not affected by the fact that he subsequently stopped making "rental" payments to Mid America pursuant to the fraudulently induced transaction or by the mortgage foreclosure which occurred after Mid America had fraudulently acquired title. Likewise, Welton is entitled to recover any payments made to Mid America to the extent such payments exceed the amounts which Mid America paid to Welton's mortgage company prior to foreclosure. We conclude that the district court was clearly wrong in determining that Welton did not prove damages resulting from the fraud of defendants, and we remand the cause for determination of the specific amount of damages attributable to Welton's loss of equity and payments made to Mid America.

### (c) UDTPA

 Plaintiffs cross-appeal from the determination by the district court that there was no private right of action under the UDTPA. Because we have determined that plaintiffs are entitled to recover their damages and attorney fees under their alternative theories of fraud and violation of the CPA, we need not reach this issue. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005).

### III. CONCLUSION

In case No. S-03-1257, we affirm that portion of the judgment of the district court in favor of the Eichers, the Sweeneys, Gulley, Starman, Novachich, Righter, Hill, and Griess against defendants. Likewise, we affirm the award of attorney fees by the district court. We reverse that portion of the judgment of the district court which dismissed the claim of Street and remand that portion of the cause to the district court with directions to adjudicate Street's claim on its merit. We also reverse that portion of the judgment of the district court which declined to award damages to Welton, and remand that portion of the cause to the district court with directions to award damages to Welton in an amount which it shall determine from the existing record.

For the reasons discussed above, we dismiss case No. S-04-1184 as moot.

JUDGMENT IN NO. S-03-1257 AFFIRMED IN PART AND IN PART REVERSED, AND CAUSE REMANDED WITH DIRECTIONS.

APPEAL IN NO. S-04-1184 DISMISSED.